368 So.2d 357 (1979)
THE FLORIDA BAR, Complainant,
v.
Ronald J. FATH, Respondent.
No. 55613.
Supreme Court of Florida.
February 22, 1979.
Anita F. Dahlquist, Asst. Staff Counsel, Tallahassee, and Joel D. Eaton, Bar Counsel, Miami, for complainant.
No appearance for respondent.
PER CURIAM.
This disciplinary proceeding by The Florida Bar against Ronald J. Fath, a member of The Florida Bar, is before us on complaint of The Florida Bar and report of the referee. The referee's report and record were duly filed with this Court pursuant to Florida Bar Integration Rule, article XI, Rule 11.06(9)(b). No petition for review has been *358 filed but we are nevertheless required to review the report of the referee. Fla.Bar Integr.Rule, art. XI, Rule 11.09(3)(f).
The findings of fact and recommendations of the referee in pertinent part are as follows:
II. Summary of Facts.

On March 16, 1974, Pedro Uzat was involved in an automobile accident in Dade County, Florida, arrested and charged with careless driving, driving under the influence of alcohol, and leaving the scene of an accident by investigating officers. Following his release on bond, Uzat, and his wife, received a number of telephone calls from an unidentified caller advising that he contact Fath to represent him on the charges. Uzat testified that at the time of the accident he did not know Fath, and had never had any contact with him.
Thinking, however, that the unidentified calls emanated from the police,[1] Uzat contacted Fath, who agreed to represent him in connection with the three traffic charges. Fath and Uzat agreed upon a fee of $500.00, and Uzat paid Fath at least $460.00 of the $500.00 in a series of four installment payments, the first on May 7, 1974, and the last two on January 10, and February 27, 1975. Uzat submitted receipts for these payments, signed by either Fath or his secretary, to the Grievance Committee. By letter to the Committee, Fath denied ever receiving the fee.
[1] No inference has been drawn that Fath initiated the calls.
According to court records, trial on the charges was set initially for June 3, 1974, but continued to June 13. On that date, Uzat did not appear. According to his testimony, he received no notice from the court of the trial date, and neither he, nor his wife, were informed by Fath of the scheduled hearing. While court records contained an inaccurate address, as Uzat had given his brother-in-law's address to the investigating officers in case bond was necessary, both he and his wife testified that they had given Fath their correct home address and their correct telephone number on several occasions.
Although Fath appeared on Uzat's behalf on June 13, the court issued a bench warrant for Uzat's arrest and ordered his driver's license suspended for five years. Fath does not deny, in his December 9, 1976 letter to the Grievance Committee, that he failed to inform Uzat of the June 13 trial date. No mention is made of why this fact was not brought to the court's attention prior to the issuance of the warrant and the suspension of the defendant's driver's license.
The record further reflects that Fath failed to advise Uzat of the action taken by the court following his failure to appear. Though Fath represents in his letter of December 9 to the Grievance Committee that he tried unsuccessfully by telephone and letter to notify Uzat of the court's action, Uzat and his wife deny receiving any such call or letter, and the record does not reflect that such a letter was delivered to Uzat. It was only months later, when Uzat attempted to renew his Florida driver's license, that he discovered that his license had been suspended and that a bench warrant had been issued for his arrest.
Upon discovery of the action taken by the court on June 13, Uzat contacted Fath for an explanation. Fath advised that he would take care of the matter, and upon this representation, in January and February of 1975, Uzat continued to make installments upon the $500.00 fee. The record reflects however, that Fath made no attempt thereafter to rectify the action taken by the court on June 13. There is no evidence in the record of any attempt by Fath to advise the court that his client had not been notified of the hearing, regardless of the reason; to have the bench warrant rescinded; to reschedule the trial; or to set aside the suspension.
Accordingly, upon consideration of the pleadings and the evidence before me, I find as follows:
1. Respondent Ronald J. Fath is, and at all times hereafter mentioned was, a *359 member of The Florida Bar, subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. Shortly after March 16, 1974, Fath was retained by Pedro Uzat to represent him in connection with three traffic citations described above, including trial upon those charges. Uzat paid Fath at least $460.00 for his services in connection with these traffic citations over a period of ten months, beginning May 7, 1974, terminating February 27, 1975.
3. Fath made no attempt to notify Uzat of the date of trial upon the charges covered by the contract for services, and Uzat was accordingly unaware that trial upon the three charges which Fath was hired to handle was to be held, and was held, on June 13, 1974.
4. Uzat did not receive notice from the court of the June 13 trial date because Uzat's address appearing upon court records was incorrect.
5. Fath appeared before the court on June 13, 1974, on behalf of Uzat, and was present when the court issued a bench warrant for Uzat's arrest, and suspended his driver's license for five years on the basis of his non-appearance.
6. Fath did not advise Uzat, by letter, by telephone, or other fashion, of the action taken by the court on June 13, nor did he thereafter make any effort to use reasonably available means provided by the law to have the charges against Uzat tried on the merits, or to present to the court the reasons for Uzat's non-appearance at trial on June 13.
7. Upon learning a few months after the warrant was issued, and the suspension imposed, of the action taken by the court, Uzat contacted Fath and asked his assistance in asserting his rights, and Fath agreed to attempt to pursue legal remedies available to Uzat to correct the default action taken against him by the court.
8. Following this agreement, Fath took no further action to represent Uzat in connection with the traffic charges pending against him, the outstanding bench warrant, or the suspension of his driver's license, yet continued thereafter to accept money from him for legal services.
9. Uzat and his wife made repeated efforts thereafter to contact Fath, spoke repeatedly with his office and his secretary, and Fath refused to return these calls or otherwise contact his client.
10. Fath was personally served with a copy of the Complaint of The Florida Bar herein by certified mail on March 9, 1978, filed no answer to the Complaint, did not appear at trial before the referee on May 13, 1978, and was not represented by counsel at that trial. In accordance with the provisions of Rule 11.13(2), Integration Rules of The Florida Bar, notice of the referee's trial was sent to Fath by certified mail at his last known address in the records of The Florida Bar, 1710 N.W. 7th Street, N.W., Miami, Florida, an address twice confirmed by Bar counsel through the yellow pages directory for the City of Miami, and in telephone conversation with respondent's secretary. Moreover, on May 3, 1978, at the request of the referee, Fath's secretary was personally served by special process server with copies of the Complaint of The Florida Bar and the notice of trial before the referee following repeated attempts by the special process server to serve the respondent personally. To repeat, extraordinary efforts were made to insure that Fath had notice of the trial before the referee, and to guarantee his right to confrontation, cross-examination, and to present witnesses.
11. Fath was retained by Uzat to represent him in connection with the March 16, 1974 traffic charges, accepted a fee for his services, did not provide the services contemplated by his agreement with his client, and both prior to and after the June 13, 1974, trial, neglected representation of Uzat in connection with the traffic charges.
12. Fath intentionally failed to seek Uzat's lawful objectives through reasonably available means permitted by law by not advising the court on June 13, 1974, *360 or thereafter, that he had not advised his client of the date of trial, and by not petitioning the court to quash the bench warrant and rescinded the driver's license suspension because of an unintentional and inadvertent failure of the client to appear at trial.
III. Recommendation of Guilt or Innocence.

I recommend that the respondent be found guilty of each charge set forth in the Complaint of The Florida Bar, and specifically that he be found guilty of the violation of Disciplinary Rules 6-101(A)(3), 7-101(A)(2), and 7-101(A)(3) of the Code of Professional Responsibility promulgated by this Court.
IV. Recommendation as to Disciplinary Measure to be Applied.

It is the recommendation of the referee, on the basis of the foregoing violations of the Disciplinary Rules of the Code of Professional Responsibility, that respondent Ronald J. Fath be publicly reprimanded and suspended from the practice of law for a period of three (3) months, with automatic reinstatement at the end of this period, such automatic reinstatement to be expressly conditioned upon payment by the respondent of the costs of this proceeding, and restitution to his client in the amount of $460.00, all as provided by Rule 11.02(2), Integration Rules of The Florida Bar.
I am advised by Bar counsel that the respondent has no prior record of disciplinary action by the Supreme Court. The offenses described here are, therefore, respondent's first violation of the Disciplinary Rules. It is the judgment of the referee, however, that the recommended suspension is fully justified by the seriousness of the violations cited. In addition, I find that the recommended discipline is further justified by respondent's blatant disregard for these disciplinary proceedings.
Having carefully reviewed the record, we find the allegations of the complaint to be proved by clear and convincing evidence and, therefore, we approve the findings and recommendations of the referee. See Florida Bar v. Blaha, 366 So.2d 433 at 438 (Fla. 1978); Florida Bar v. Timson, 257 So.2d 44 (Fla. 1971); Florida Bar v. Taylor, 201 So.2d 449 (Fla. 1967).
Accordingly, respondent, Ronald J. Fath, is hereby suspended from the practice of law for a period of three months, with automatic reinstatement at the end of this period. However, such automatic reinstatement is conditioned upon payment by respondent of the costs of this proceeding and restitution to his client in the amount of $460, as provided by Florida Bar Integration Rule, article XI, Rule 11.02(2).
The suspension shall be effective on March 26, 1979, thereby giving respondent time to close out his practice and take the necessary steps to protect his clients, and it is ordered that respondent shall not accept any new business.
Costs in the amount of $347.20 found by this Court to have been reasonably incurred by The Florida Bar are hereby taxed against the respondent.
It is so ordered.
ADKINS, Acting C.J., and BOYD, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.